56

Inger McMahon, Plaintiff in Error, v. Frank L. Smith, Defendant in Error.

Gen. No. 36,920.

Opinion filed May 2, 1934.

EDWARD SCHATZ, for plaintiff in error; HARRY HAM-ILL, of counsel.

FISCHEL, KAHN, HEART & EPSTEIN, for defendant in error.

MR. JUSTICE HEBEL delivered the opinion of the court.

This cause is in this court upon a writ of error directed to the superior court of Cook county to review the record, wherein Inger McMahon, complainant, on May 29, 1929, filed a bill for an accounting against Frank L. Smith, defendant. Upon an answer being filed, the chancellor referred the cause to a master in chancery, and upon the recommendations and findings of the master, the chancellor, on July 16, 1931, dismissed the bill for want of equity.

From the record it appears that the complainant is a resident of Morris, Illinois, and that on or about August 2, 1924, was the owner in fee simple of certain lands situated in Grundy county, State of Illinois, which are fully described in the bill of complaint. This property was subject to foreclosure proceedings then pending. It was also subject to sale by reason of delinquent payment of taxes. Frank L. Smith, one of the defendants, was engaged in buying and selling real estate and farm lands, and making loans thereon. On or about the 2nd day of August, 1924, said real estate was sold in a foreclosure proceeding and the period of redemption was about to expire. The complainant conferred with the defendant Frank L. Smith regarding financial assistance in endeavoring to sell her property, and proposed to sell 240 acres of said land and to procure a loan on the balance. After negotiations, the complainant decided that it would be necessary to sell more of the land, and from the evidence it appears that she finally agreed to sell 400 acres to Frank L. Smith for $140 per acre; that Smith agreed to procure a loan of not more than $34,000 on

the remaining 320 acres of land, and thereupon the complainant and J. C. McMahon, her then husband, and the defendant Frank L. Smith entered into a certain agreement in writing as follows:

"Morris, Illinois August—1924.

"Whereas Inger McMahon and husband have executed a deed to certain lands in Saratoga Township, Grundy County Illinois of even date herewith and whereas it is desired that an agreement concerning the said transfer be executed it is therefore hereby understood and agreed that the undersigned Frank L. Smith will reconvey to the said Inger McMahon the South Half of Section Nine 34–7 East 3 P. M. in Grundy County, Illinois, and furnish the said Inger McMahon a loan on said premises up to $34,000 on a basis of $5\frac{1}{2}\%$ and $2\frac{1}{2}\%$ cash commission with the understanding that if the undersigned Smith can place said loan at a rate of less than $5\frac{1}{2}\%$ he will be entitled to the difference for the full term of the loan. Said loan to be a first lien on said premises. Said Smith is to allow said Inger McMahon $56,000 for the 400 acres and to be allowed a discount of $140 per acre for any shortage. Said Inger McMahon is to execute a contract of Agency to the said Smith for the said 320 acres to be irrevocable during the term of the said loan and under said contract said Smith is to have entire charge of said half section to rent it, collect the rent, keep the buildings insured, sell the grain, collect the rents make any necessary repairs and out of the income therefrom apply the same on the payment of interest, taxes, insurance and repairs. If for any reason said Smith is unable to negotiate for the redemption of said lands from the foreclosure sale then this agreement is null and void and said Smith will execute a quit claim deed to said Inger McMahon for said lands."

This agreement was signed by each of the parties. The signatures were witnessed by Frank L. Flood. At

the time of the execution of the agreement, complainant and her husband made and executed their quitclaim deed, conveying to said Frank L. Smith the following described real estate: ''The Northwest Quarter (NW¼) of Section ten (10); the Northeast Quarter (NE¼) of Section Nine (9); the Southeast Quarter (SE¼) of Section Nine (9); the Southwest Quarter (SW¼) of Section 9; and the East Half (E½) of the Southeast Quarter (SE¼) of Section Sixteen (16), all in Township Thirty-four (34), North, Range Seven (7) East of the Third Principal Meridian.''
subject to liens and incumbrances. The deed was duly acknowledged before a notary public, and filed for record in the office of the clerk of the circuit court of Grundy county. Upon the execution of the above agreement, the complainant and her then husband, and Frank L. Smith, entered into a certain agreement dated the 9th day of August, 1924, which is substantially as follows: That by this agreement Frank L. Smith during the term of the loan is hereby constituted and appointed the agent of the complainant to look after, manage and operate the 320-acre tract of land, giving Frank L. Smith full power and authority to lease said land, collect the rent, sell grain, make the necessary repairs, provide for insurance on the buildings, pay taxes and interest on the mortgage on the land described in the contract, and after deducting reasonable compensation for his services, to pay the balance, if any, to the complainant. It also appears that said agency contract was to be irrevocable during the term of the mortgage, provided the complainant and her husband should continue to be owners of said property during said terms.

The contract contains other conditions and provisions, such as if the complainant shall desire to sell property to any proposed purchaser, she will give

Frank L. Smith an opportunity to purchase said property at a price equal to that offered by any other person. It also provides for a reasonable compensation, and is signed by the parties and witnessed by S. Thompson and Harry Hamill.

There is evidence that after execution of the quitclaim deed by said complainant to Smith, it was agreed between them that she would convey the said 400 acres of land to the prospective purchasers in separate parcels, and thereupon Smith and his wife conveyed said 400 acres of land to the complainant, and she executed separate warranty deeds, bearing date September 1, 1924, conveying the whole of said 400 acres in separate parcels as described in the deed, to one B. E. Hamilton, one Louise W. Crain, and the balance of said 400-acre tract to one Fred D. Zabel.

That defendant Smith procured a loan of $30,000 for said complainant, which loan was secured by a trust deed bearing date August 1, 1924, and conveying the south half of section 9, described in the trust deed, which was given to secure the principal note of said complainant and her husband for $30,000, bearing the date of said trust deed and due five years after date thereof, with interest at the rate of six per cent per annum. It also appears from the record that on the 8th day of September, 1924, the defendant Frank L. Smith prepared a statement for the complainant, showing the state of the account between them, which said statement was submitted to, and, from the record, appears to have been approved by said complainant, and that this account with Frank L. Smith was an itemized account.

It appears that said Frank L. Smith prepared a second mortgage loan of $5,000 for the complainant, and a statement of this transaction is contained in the record. A statement was prepared by Smith and submitted to the complainant, and it appears from the

face of this statement that the account was approved by her. This is also an itemized account between the complainant and the defendant Frank L. Smith, and the receipts and expenditures are specifically set forth in the statement.

It also appears from the evidence that from the first statement of account between the parties there was a payment to the complainant of $3,377.73, which payment was evidenced by a check signed by Frank L. Smith dated September 8, 1924, payable to the complainant, by her indorsed and deposited in the Farmers and Merchants National Bank, Morris, Illinois, on September 10, 1924.

It also appears, as shown by said first statement, that $125 was refunded to her, which said sum was charged for commissions on the second mortgage loan, and appears in the second statement.

It also appears that the sum of $3,444.90 shown on the second statement in the record, was paid to the complainant and was evidenced by three checks, one for $200, payable to the complainant, by her indorsed and turned over to Smith to apply on taxes, one for $244.90, also payable to the complainant, which she indorsed and delivered to Harry Hamill, her attorney, and which bears his indorsement, and another check for $3,000, which the complainant turned over to one Mrs. O. L. Sangelman.

The complainant denies, however, that she received any of the statements which we have mentioned; she also denies the execution of the deeds conveying the real estate heretofore mentioned. There is evidence in the record that said statements were submitted to the complainant; that she approved the same; that the several items appearing in said statements were properly expended for the benefit of the complainant, and that she received the balance, as shown by each of said statements appearing in the record. There is evidence

that the lands in question were sold for $56,000 to Smith, that all of the transactions took place in the year 1924 and the early part of 1925, and that the complainant did not take legal steps for an accounting against Frank L. Smith 'until she filed the bill of complaint against him on the 29th day of May, 1929, a period of more than four years after the transactions had taken place.

It also appears that the complainant disputes the claim of Frank L. Smith, and contends that she is entitled to moneys received for the grain cut on the land in the year 1924. There is evidence that the grain was stored in the grain elevator at Morris, Illinois, and that the Morris Grain Company of Morris, Illinois, made the distribution of the proceeds of the sale of said grain, and that there was paid to Louise W. Crain, the purchaser of part of the land, the sum of $137.80 to B. E. Hamilton, the purchaser of certain other portions of said lands, the sum of $384.20, and to Fred D. Zabel, the purchaser of the balance of said 400-acre tract, the sum of $407.95, and that said payments were made by the Morris Grain Company at the direction of the complainant, and that defendant Frank L. Smith did not receive any of the proceeds from the sale of said grain.

Objections were filed to the report of the master and also to his supplemental report, which were overruled; and thereafter, upon presentation of the master's report to the court, complainant was permitted to file exceptions. Upon consideration, the court overruled the exceptions and dismissed the bill for want of equity.

From complainant's statement in her brief, it appears that she does not question any of the transactions of Smith involving the 320-acre tract of land, its care, income or disbursements, nor does she question the written statement of account made by Smith.

Complainant admits that she signed the irrevocable agency for the 320 acres, and that she received credit for both loans on the 320 acres, and that there is no controversy as to the 320-acre tract, the loans thereof, or its care and collection of rents, since 1925, by the defendant Frank L. Smith, but the complainant contends that defendant Smith did not account for the balance of the purchase money collected by Smith from the purchasers of the 400 acres, amounting to $5,000 and also that he did not account for the grain money realized from the 1924 crop on the 400 acres, which it is contended was misappropriated by Smith, and also $500 wrongfully paid to attorney Flood as attorney's fee alleged to be due Flood from the complainant, and also the excess amount paid to Boyd over the amount due him on his decree of foreclosure against the complainant.

Did the defendant Frank L. Smith, in the sale of the 400-acre tract of land, act as the agent of the complainant? The position of the defendant throughout the transaction has been that he acted as the purchaser of the land in question from the complainant. The acts of the parties will largely determine this question. In the inception of the transaction, it is to be noted that the complainant was sorely in need of funds and, as a result of the complainant's visits to the defendant's office, a contract was entered into on August 2, 1924. This contract was signed by the complainant and her husband, and the defendant Frank L. Smith.

From the agreement it appears that defendant Smith was to allow to the complainant $56,000 for the 400 acres described in the agreement, and it follows as a reasonable construction of the entire instrument, which is hereinabove set forth, that the defendant was to pay this price for the purchase of the land, and that a discount was to be allowed for a shortage in the acreage of the land at the rate of $140 per acre. This

construction is further supported by a document dated June 24, 1925, signed and acknowledged by the complainant addressed to the defendant.

The complainant in that agreement construes the contract of August 2, 1924, as a contract to sell and convey the land in question to the defendant Frank L. Smith, and the complainant stated in this document, in effect, that Smith contracted to sell part of the 400-acre tract of land to one Fred Zabel, which was to be conveyed by deed direct to Zabel in fulfillment of the Smith and Zabel contract. It finally appears from this written agreement that if Smith was compelled to allow Zabel for a shortage of the land, the complainant agreed to pay the shortage to Smith. From this statement it clearly appears that the complainant understood that the agreement of August 2, 1924, was a contract to sell the land in question to Smith, and was so understood by her when she signed and acknowledged this agreement. The consideration mentioned in the three warranty deeds conveying the several pieces of land described to B. E. Hamilton, Louise W. Crain and Fred Zabel, totals the sum of $61,000. The complainant had knowledge that this sum was received by Smith when she executed and delivered the several deeds to the parties therein mentioned; and when the statement of account was received by her from Smith dated September 8, 1924, and signed and approved by her, she must have known that she was to receive from Smith the purchase price of $56,000.

The first act of a principal when his agent fails to account, is to object to the accounting when it appears that the agent does not fully account for the total sum to be accounted for. This was not done by the complainant, but she accepted a check from Smith for the balance due her. This amount due appears from the statement received by her dated September 8, 1924.

While the complainant has questioned some of the written exhibits in the record, still there is no evi-

dence that she was unable to read and write. The complainant appears to have been able to comprehend the accounts signed and approved by her, and if she did not understand, it was her duty to investigate and learn the nature of the several transactions. The evidence does not tend to show that the defendant prevented the complainant from ascertaining the truth regarding the several statements and documents furnished to her by the defendant. In the complainant's brief she does not question the statement of account by Smith, except that the amount received by him from the sale of the 400 acres of land was not accounted for, and further, that the amount received for grain by the several purchasers of the land was also unaccounted for.

There was nothing in the transactions that would indicate fraud in the conduct of the defendant Smith. The contention of the complainant that defendant Smith failed to account for the grain stored with the Morris Grain Company, of Morris, Illinois, is not borne out by the record. There is evidence that the sale proceeds of the grain in question was delivered, as directed by the complainant, to the three purchasers of the 400-acre tract, and the three checks payable to the purchasers of the land were produced by a witness who testified that the money for the grain was paid as directed by the complainant, and that Smith did not receive any of the money. It might be said in this connection the complainant stated to this witness, M. H. Wilcox, that she had sold part of the land to Smith and as a result the defendant Smith was entitled to the money received for the grain. A statement of similar import, namely, that the complainant sold 400 acres of her land to Smith, was made by her to George Bedford, the county judge who took the acknowledgment of the complainant and her husband to the deed conveying the title of her land to Smith. As to the objection of the complainant that the defendant was

not justified in allowing a payment of $500 to be made to one Flood without her consent, the defendant's account dated September 8, 1924, included this $500 payment, and this account was approved by the complainant. The statement listed all disbursements necessary to pay and discharge the judgment lien upon the 400-acre tract, and the amount necessary to effect a redemption from a foreclosure sale, and the balance left in this account was paid to the complainant. It is not disputed that the amount of $500 paid to Flood was entered upon the ledger sheet of the defendant. There is also evidence that ledger sheets were submitted to the complainant, who did not at any time state that the entries in the accounts were not correct. It is clear that the complainant approved the several statements of account, and having done so after full knowledge of the facts, she is not now in a position to claim that fraudulent entries were made upon the books of the defendant Smith.

The law is well settled that this court will not disturb the findings of the court below in a case involving an accounting and consideration of numerous items in the accounting, unless the findings are shown to be manifestly against the weight of the evidence. In the case of *Chicago Title & Trust Co. v. Central Trust Co.,* 312 Ill. 396, the court upon this same question said:

"We simply conclude this part of the case by saying that the law of the case is fully stated in this and our former decision, when we add the further statement that we have recognized the law as settled by this court in numerous decisions that we will not disturb the findings of the master and the court below in a case of this kind, involving an accounting and consideration of numerous items in the accounting, unless such findings are shown to be manifestly against the weight of the evidence. This court has plainly stated in the case of *Williams v. Lindblom,* 163 Ill. 346, that the findings of

fact by the master are conclusive in such a case unless a clear mistake or fraud is shown.''

The complainant contends that the trial court permitted the defendant to file an amended answer, which, according to complainant's contention, was a clear abuse of discretion. The court did permit the defendant to file an amended answer, which was filed on June 2, 1930, and after the filing of this amended answer, the complainant did not offer any further evidence upon the issues as they appear from the pleadings, which include the amended answer. The master's report was filed on January 6, 1931, which was several months after the court permitted the filing of the amended answer, and the rule is that a court may in its discretion permit the pleadings to be amended, provided no prejudice results to any of the parties involved in the litigation. From the record we are unable to find that the complainant was prejudiced by the filing of the amended answer, and we can find nothing in the record which would tend to show that the court abused its discretion when it permitted the defendant to file an amended answer.

The point is made by the complainant that the alleged contract is not enforceable, and could not be enforced by either of the parties to this alleged contract, and therefore is void and contrary to the statute of frauds and the Sales Act in force in the State of Illinois. This question is not a material one upon the state of the record as we have it before us. In the first place, this is not a suit to enforce a contract to convey real property, but is in the nature of a bill for an accounting filed by the complainant against the defendant; and secondly, the complainant conveyed the land by warranty deed to the several parties named therein, and is only now seeking to recover what she claims is a balance of the consideration for the transfer and the amount recovered from the sale of certain

grains which were harvested on the land in question. In the consideration of this case we have concluded that the status of defendant Smith was not that of an agent, but of a purchaser of land from the complainant, and from the record it appears that the defendant paid the consideration as a purchaser to the complainant. Therefore, the chancellor did not err in overruling the complainant's exceptions to the master's report and in entering the decree dismissing the bill of complaint for want of equity. It follows that the decree must be affirmed.

*Decree affirmed.*

HALL, P. J., and WILSON, J., concur.